817 So.2d 858 (2002)
Jerome BECK, Appellant,
v.
STATE of Florida, Appellee.
No. 5D01-526.
District Court of Appeal of Florida, Fifth District.
April 5, 2002.
Rehearing Denied June 7, 2002.
*859 James B. Gibson, Public Defender, and Michael S. Becker, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Denise O. Simpson, Assistant Attorney General, Daytona Beach, for Appellee.
PERRY, B., Associate Judge.
The defendant appeals from criminal convictions and sentences for aggravated battery, felony driving under the influence, and felony failure to appear. The defendant entered pleas of no contest to the charges. The trial court imposed a departure sentence of eight years incarceration on the aggravated battery charge followed by five years probation and concurrent departure sentences of five years imprisonment each on the felony driving under the influence and failure to appear charges. This court has jurisdiction pursuant to Florida Rule of Appellate Procedure 9.030(b)(1)(A).
The trial record established the following facts. The defendant, Jerome Beck, was arrested on June 28, 1991, for aggravated battery with a motor vehicle after running his vehicle into a motorcycle and its rider, Terry Herzee, on Ridgewood Avenue in Daytona Beach. The defendant, on October 8, 1991, was charged by information with aggravated battery and driving under the influence resulting in serious bodily injury. A motion to withdraw as counsel filed in the record revealed that the defendant's counsel lost contact with the defendant after "mid-September, 1991." A capias for defendant's arrest was issued by the trial court on December 9, 1991. On October 6, 2000, the defendant was arrested by U.S. Customs upon his entry into the United States from Germany.
The defendant entered pleas of no contest to both charges contained in the information and a felony failure to appear charge for his failure to appear for a court date in 1991. At his sentencing hearing on February 8, 2001, the trial court heard at length from several of the victim's family *860 members, and reviewed evidence in the form of videotapes reflecting the victim's life before and after the incident. The evidence reflected the victim was "completely normal" and "leading a full life" before the incident. After the incident and a resulting three month coma, however, the victim emerged from the coma confined to a wheelchair and unable to bathe himself; he had to live with family members so that they could take care of him. Although at the time of the sentencing hearing the victim was able to walk and dress himself, his condition had reached a plateau and the brain injury he had suffered was permanent. As the victim's mother put it:
At the scene of the accident Terry's life as we knew it was over. ... They lost him at the accident, I was told, and the paramedics brought him back.
With a lot of good doctors and nurses and therapist, a lot of work from his family, he has progressed to what you can see today. He will never be able to fish or hunt or drive or do the things for himself that he used to do.
The state informed the court that the defendant's blood-alcohol content was .15 at the time of the incident. The trial court also learned that the defendant had fled to Germany in 1991 and was working for Amazon.com when he was apprehended in 2000.
According to the 1991 score sheet, a permitted sentence could range from community control up to four and one-half years of incarceration. The state argued for an upward departure, which had been recommended by the PSI officer, and the trial court followed that recommendation.
The trial judge stated:
This is a difficult matter to be concerned with. The reason it is difficult is because you, by an act ten years ago, essentially destroyed the life of one man and ruined the life of his family. In response to that, you've decided to take off; you avoided responsibility by fleeing to Germany. It was only through accident that you were recovered when you snuck back in this country.
I just don't have a lot sympathy for you, I really do not. As a result I'm going to upwardly depart, the grounds being the victim suffered extraordinary physical or emotional trauma, permanent physical injury, Ground No. 1.
I'm going to upwardly depart because of the fleeing.
The trial court then imposed a departure sentence and the defendant filed a timely notice of appeal.
On June 22, 2001, four months after the sentence had been imposed, the defendant, pursuant to Florida Rule of Criminal Procedure 3.800(b), filed a motion with the trial court to correct a sentencing error. In that motion, the defendant argued that no written reasons for the upward departure sentence were ever filed and thus his sentence should be reversed and a guidelines sentence imposed. After a hearing on the motion, the trial court rejected the defendant's argument, confirmed the original sentence, and filed its written reasons for the upward departure.

ISSUE ONE
The first issue presented by the defendant is whether the trial court erred in imposing a departure sentence without filing written reasons for the departure.
The defendant complains that any departure sentence had to be accompanied by written reasons explaining the departure, and the trial court initially failed to do so here. The defendant contends that the trial court could not simply revisit and reimpose the same departure sentence via the Rule 3.800(b) motion and enter the *861 written reasons, but rather the trial court had to revisit the sentence and reduce it to a guideline sentence.
Whether it is lawful for a trial court to impose a departure sentence without entering written reasons for the departure is a question of law and thus must be reviewed de novo.
Currently, by statute and case law, a trial court is required to enter written reasons for an upward departure sentence within seven days of sentencing. § 921.0016(1)(c), Fla. Stat. (2001); State v. West, 718 So.2d 266, 267 (Fla. 5th DCA 1998) ("Timely written reasons for departure sentences, upward or downward are required"); Wilcox v. State, 664 So.2d 55 (Fla. 5th DCA 1995). Here, the trial court failed to enter its written reasons for its upward departure at the time of imposing the defendant's sentence.
When the trial court revisited the sentence via defendant's Rule 3.800(b) motion, the court relied on Pope v. State, 561 So.2d 554 (Fla.1990), to support its conclusion that it could enter the written reasons for departure five months after the original sentence. In Pope, the Florida Supreme Court explained why written reasons for departure were necessary:
The failure of trial courts to provide written reasons inappropriately requires appellate courts to cull through the sometimes extensive sentencing colloquy in search of "reasons" supporting departure, thereby making possible results that are imprecise and unintended by the trial court.
Id. at 555-56.
Citing Carridine v. State, 721 So.2d 818 (Fla. 4th DCA 1998), the defendant contends that the trial court did not have the authority to fix the sentencing error by simply late-filing written reasons for departure. In Carridine, the Fourth District Court of Appeal stated:
At sentencing, the court orally imposed, and announced the reasons for, an upward departure sentence. A sentencing guidelines score sheet, which included a departure checklist, was filed the day of the sentencing. The four grounds justifying departure were checked off on the checklist with an "X". However, the court inadvertently neglected to sign the checklist or the supplemental guidelines score sheet.
* * *
Appellant timely filed a motion in the trial court to correct sentencing errors, arguing that the court's failure to timely file signed written reasons for departure required the court to impose a sentence within the guidelines. At a hearing, the court characterized the failure to sign the documents as a scrivener's error, and over objection, signed the checklist nunc pro tunc to the date of the resentencing hearing.
Id. at 818. The Fourth District Court of Appeal held that this error was no mere scrivener's error, and that in any event the error was not excusable. Id. at 819. The court explained:
This [nunc pro tunc "mechanism" to correct errors] is not, however, available for the benefit of parties if there has been a failure to observe proper procedure. In the present case, it was the trial judge who failed to comply with the requirements in rule 3.840(f) to "sign and enter of record a judgment of guilty or not guilty" at the conclusion of the hearing. A court's incorrect action or failure to act does not warrant the entry of a nunc pro tunc decision.
Despite the holding in Carridine, the Florida Legislature's Criminal Appeal Reform Act of 1996, codified in section *862 924.051 of the Florida Statutes (Supp. 1996), dictates another outcome. Section 924.051(3) provides:
An appeal may not be taken from a judgment or order of a trial court unless a prejudicial error is alleged and is properly preserved or, if not properly preserved, would constitute fundamental error. A judgment or sentence may be reversed on appeal only when an appellate court determines after a review of the complete record that prejudicial error occurred and was properly preserved in the trial court or, if not properly preserved, would constitute fundamental error.
Section 924.051(1)(a) of the Florida Statutes, states that "`prejudicial error' means an error in the trial court that harmfully affected the judgment or sentence."
The Third District Court of Appeal in Weiss v. State, 720 So.2d 1113 (Fla. 3d DCA 1998), aff'd, 761 So.2d 318 (Fla.2000), has explained the effect of the Criminal Appeal Reform Act on cases like the instant case. That court has expressed its view that the late filing of departure reasons is a "meaningless procedural hiccup" that "constitute[s] no more than non-prejudicial, harmless error." Id. at 1115. In Weiss, the defendant complained that the written departure reasons were filed late and the defendant, (like the defendant here) argued that the lateness required his sentence to be reduced to a guidelines sentence. The court in Weiss disagreed and explained that "the Criminal Appeal Reform Act ... requires both preservation and harm" in order for a sentence to be reversed. Id. (emphasis added). The court stated:
It was always difficult, at best, to discern a rational justification for setting aside an otherwise appropriate sentence just because a piece of paper was filed immaterially late. The legislature has now expressly precluded such a result.
Id. (citation omitted).
The defendant in this case does not argue that the reasons for departure are invalid. His sole argument is that a piece of paper was not filed timely. The defendant is not challenging the reasons for the departure sentence, but only the procedure of how it was imposed. If the reasons given for departure were invalid, then the defendant would be entitled to the relief requested. However, after a review of the complete record on appeal there is no evidence of harm that has been suffered by this defendant. The rules of procedure were neither designed to nor intended to be an escape device from justice.
After oral argument but while this appeal was under consideration, the Supreme Court of Florida issued an opinion on precisely this issue. In Mandri v. State, 813 So.2d 65 (Fla.2002), the court answered the following certified question in the negative:
WHERE A TRIAL COURT FAILS TO FILE WRITTEN REASONS IN SUPPORT OF A GUIDELINES DEPARTURE SENTENCE BUT, THEREAFTER, IN RESPONSE TO A FLORIDA RULE OF CRIMINAL PROCEDURE 3.800(B) MOTION FILED BY DEFENDANT, DOES FILE WRITTEN REASONS JUSTIFYING THE DEPARTURE, IS DEFENDANT ENTITLED TO A REVERSAL AND A REMAND FOR A GUIDELINES SENTENCE, UNDER MADDOX V. STATE, 760 So.2d 89 (Fla.2000)?
Thus, under the Criminal Appeal Reform Act and the recent ruling by the Supreme Court of Florida in Mandri, the defendant is not entitled to the relief requested and his departure sentence is affirmed.

*863 ISSUE TWO
The second issue presented by the defendant is whether his failure to appear conviction is precluded by the statute of limitations. The law is clear that the statute of limitations defense can be waived.
In Tucker v. State, 459 So.2d 306, 309 (Fla.1984), the Florida Supreme Court explained that the statute of limitations defense can be waived when the trial:
court [is] satisfied that the defendant himself, personally and not merely through his attorney, appreciates the nature of the right he is renouncing and is aware of the potential consequences of his decision. We agree with the state's position that an effective waiver may only be made after a determination on the record that the waiver was knowingly, intelligently and voluntarily made; the waiver was made for the defendant's benefit and after consultation with counsel; and the waiver does not handicap the defense or contravene any of the public policy reasons motivating the enactment of the statute.
The defendant contends that there was no knowing, intelligent and voluntary waiver in his case. The record reflected that the defendant indicated he wished to plead no contest to the charges he was facing, including the failure to appear. The trial court advised the defendant that he was giving up the right to assert any defenses he could have to the charges. The defendant acknowledged he understood that but said he wanted to go ahead and plea. He said he understood what he was doing and was not being forced to plea. The trial court stated for the record that the defendant's plea was knowing and voluntary.
In State v. Robbins, 780 So.2d 89 (Fla. 2d DCA 2000), the Second District Court of Appeal addressed a similar case. In Robbins, Robbins was charged with two counts of robbery. After Robbins failed to appear on the robbery charges on June 20, 1989, he was charged with one count of failure to appear. Robbins was eventually located in Massachusetts and extradited to Pinellas County, Florida, in 1996. On March 11, 1997, he pleaded nolo contendere to all of the above-referenced charges. He was sentenced to ten years of imprisonment as a habitual felony offender on two counts of robbery and one count of failure to appear, all to run concurrently. He did not pursue a direct appeal of his convictions and sentences.
The court held that on those facts Robbins had waived the statute of limitations defense. Here, based upon the facts in this case, the court holds that the defendant waived the defense of the statute of limitations when he pleaded no contest to the failure to appear.
Because of defense counsel's argument at oral argument and counsel's assertion that trial counsel never discussed this defense with the defendant, and for judicial economy, in order to avoid a separate 3.850 proceeding, this court directs the trial court to hold an evidentiary hearing within the next 90 days. The trial court shall determine whether trial counsel in this case rendered ineffective assistance of counsel by waiving the defense of the statute of limitations.
AFFIRMED and REMANDED per instruction.
SHARP, W. and PALMER, JJ., concur.