885 So.2d 376 (2004)
Thomas B. GIBSON, Petitioner,
v.
FLORIDA DEPARTMENT OF CORRECTIONS, Respondent.
No. SC02-2362.
Supreme Court of Florida.
October 21, 2004.
*377 Robert Augustus Harper and Michael Robert Ufferman of Robert Augustus Harper Law Firm, P.A., Tallahassee, FL, for Petitioner.
Louis A. Vargas, General Counsel and Susan A. Maher, Deputy General Counsel, Florida Department of Corrections, Tallahassee, FL, for Respondent.

ON REHEARING
PARIENTE, C.J.
This case concerns the statutory authority of the Department of Corrections (DOC) to forfeit gain time from an expired sentence and apply the forfeiture to a sentence being served on a different offense. We review Gibson v. Florida Department of Corrections, 828 So.2d 422 (Fla. 1st DCA 2002), in which the First District Court of Appeal certified the following question of great public importance:
Does the forfeiture penalty enunciated in Eldridge v. Moore, 760 So.2d 888 (Fla.2000), apply where a defendant receives a sentence of incarceration for one offense followed by a sentence of probation for another offense, where both crimes were scored on a single scoresheet and the trial court awards prison credit pursuant to Tripp v. State, 622 So.2d 941 (Fla.1993), upon violation of probation for the second offense?
Id. at 424.[1]

I. FACTS AND PROCEDURAL HISTORY
In three different cases arising from crimes committed on different dates in *378 1993, Gibson was convicted of committing numerous counts of forgery and uttering a forged instrument or forged bills, all third-degree felonies. All the offenses were included in a single guidelines scoresheet because the cases were pending for sentencing at the same time.[2] The trial court sentenced Gibson to consecutive terms of five years in prison in Case Nos. 93-216 and 93-297 for a total of ten years' incarceration, followed by consecutive terms of five years on probation on the counts of uttering a forged instrument and five years on probation on the counts of forgery in Case No. 93-360 for a total of ten years' probation. Thus, the sanctions in Case Nos. 93-216 and 93-297 contained no probationary component and, as originally imposed, the sanctions in Case No. 93-360 contained no incarceration.
Gibson completed his cumulative ten-year sentence in Case Nos. 93-216 and 93-297 through a combination of time actually served and accrued gain time. Computations by the DOC show that Gibson fulfilled his ten-year sentence (consisting of 3650 days) by serving 1660 days in prison and 21 days in county jail, for a total of 1681 days (approximately 4.6 years) actually served, and by accruing 1969 days (approximately 5.4 years) of unforfeited gain time.[3]
Upon his release from prison in April 1998, Gibson commenced the terms of probation in Case No. 93-360. He subsequently violated the conditions of probation. The trial court revoked probation and sentenced Gibson to consecutive terms of four and three years in prison for a total of seven years' incarceration. On Gibson's motion, and pursuant to our decision in Tripp v. State, 622 So.2d 941 (Fla.1993), the trial court granted credit for time served of 1681 days from the completed sentences in Case Nos. 93-216 and 93-297 against the overall seven-year sentence in Case No. 93-360.
After Gibson began serving his sentences for violation of probation in Case No. 93-360, the DOC declared a forfeiture of the 1969 days of previously unforfeited gain time from the sentences in Case Nos. 93-216 and 93-297 pursuant to section 944.28(1). DOC's policy in applying the gain time forfeiture is to compare the length of the new sentence after deduction for time previously served to the amount of the forfeiture penalty, and to require the prisoner to serve the greater of the two. Essentially, this method views the forfeiture penalty and the new sentence less time served as concurrent sentences, *379 and ensures that the prisoner will serve no less than the forfeiture penalty.[4]
In Gibson's case, the new sentence of seven years (2555 days) less time previously served of 4.6 years (1681 days) would have yielded a net sentence of 2.4 years (874 days). Because the gain-time forfeiture penalty of 5.4 years (1969 days) was greater than the revocation sentence of 2.4 years after deduction of Tripp credit, the DOC in effect required Gibson to serve the forfeiture penalty. Thus, the DOC applied section 944.28(1) in a manner that required Gibson to serve the forfeiture penalty as the punishment for violation of probation.
Gibson challenged the DOC's authority to forfeit the gain time by filing a petition for a writ of mandamus, which the trial court denied. The First District agreed with the trial court and denied his petition for common-law certiorari, concluding that the forfeiture of gain time from the expired sentences in Case Nos. 93-216 and 93-297 applied to Gibson's sentences in Case No. 93-360. The First District explained that it was guided by this Court's holding in Tripp that "credit for time served on the first offense must be awarded on the sentence imposed after revocation of probation on the second," and its previous interpretation of Tripp"to mean that separate crimes and sentences may constitute a split sentence where both crimes were scored on a single scoresheet." Gibson, 828 So.2d at 423 (relying on Larimore v. State, 823 So.2d 287 (Fla. 1st DCA 2002)).
In a specially concurring opinion, Judge Lewis agreed with the majority view that the forfeiture of gain time from the sentences in Case Nos. 93-216 and 93-297 could be applied to the sentence upon revocation of probation in Case No. 93-360 "because the offenses were [originally] scored on a single scoresheet and considered together in forming his scoresheet sentence." Id. at 424-25 (Lewis, J., specially concurring). Judge Benton dissented. In his view, the gain-time forfeiture unlawfully revived the expired sentences in Case Nos. 93-216 and 93-297 and made them components of an unauthorized "general sentence." Id. at 426-28 (Benton, J., dissenting).

II. ANALYSIS
This case involves an issue of statutory interpretation. We thus begin with the actual language of the statutes that the DOC relies upon for its assertion of authority to declare a forfeiture penalty of gain time from a sentence that was already fully served and apply it to another sentence imposed upon revocation of probation.

A. Statutory Authority
Section 944.28(1), Florida Statutes (1993), provides:
If a prisoner is convicted of escape, or if the clemency, conditional release as described in chapter 947, probation or community control as described in chapter 948, provisional release as described in s. 944.277, parole, or control release as described in s. 947.146 granted to the prisoner is revoked, the department may, without notice or hearing, declare a forfeiture of all gain-time earned according to the provisions of law by such prisoner prior to such escape or his or her release under such clemency, conditional release, probation, community *380 control, provisional release, control release, or parole.
(Emphasis supplied.)[5] Section 944.28(1) is one of two provisions that authorized forfeiture of gain time upon revocation of probation at the time of the offenses in this case. The other, section 948.06(6), Florida Statutes (1993), provided:
Any provision of law to the contrary notwithstanding, whenever probation, community control, or control release, including the probationary [or] community control portion of a split sentence, is violated and the probation or community control is revoked, the offender, by reason of his misconduct, may be deemed to have forfeited all gain-time or commutation of time for good conduct, as provided by law, earned up to the date of his release on probation, community control, or control release.
(Emphasis supplied.) This subsection provides general authority to forfeit gain time and specifically refers to split sentences.[6]
The issue in this case is whether the DOC may apply the forfeiture penalty of section 944.28(1) across offenses to the guidelines sentence imposed upon violation of probation for a crime that was originally included in the same guidelines scoresheet as the offense on which the gain time was accrued. Section 944.28(1) does not specify whether the forfeiture penalty applies to split sentences. Its analog, section 948.06(6) (now section 948.06(7), Florida Statutes (2003)), specifies that the forfeiture penalty applies to the revocation of probation or community control imposed as part of a split sentence.[7] Similarly, section 921.0017, Florida Statutes (2003), which applies to offenses committed on or after January 1, 1994, specifies that upon revocation of probation when an offender is serving a "split sentence pursuant to section 948.01," the trial court shall only order credit for time served and not for gain time.
Although none of the statutory provisions governing forfeiture of gain time define a split sentence, two provisions in section 948.01, Florida Statutes (2003), relating to the trial courts' sentencing options, do explain the split sentence option. Section 948.01(6) provides, in full:
Whenever punishment by imprisonment for a misdemeanor or a felony, except for a capital felony, is prescribed, the court, in its discretion, may, at the time of sentencing, impose a split sentence whereby the defendant is to be placed on probation or, with respect to any such felony, into community control upon completion of any specified period of such sentence which may include a term of years or less. In such case, the court shall stay and withhold the imposition of the remainder of sentence imposed upon the defendant and direct that the defendant be placed upon probation or into community control after *381 serving such period as may be imposed by the court. The period of probation or community control shall commence immediately upon the release of the defendant from incarceration, whether by parole or gain-time allowances.
Section 948.01(11) provides, in pertinent part:
The court may also impose a split sentence whereby the defendant is sentenced to a term of probation which may be followed by a period of incarceration or, with respect to a felony, into community control, as follows:
(a) If the offender meets the terms and conditions of probation or community control, any term of incarceration may be modified by court order to eliminate the term of incarceration.
(b) If the offender does not meet the terms and conditions of probation or community control, the court may revoke, modify, or continue the probation or community control as provided in s. 948.06. If the probation or community control is revoked, the court may impose any sentence that it could have imposed at the time the offender was placed on probation or community control.
Section 948.01(6) defines what this Court has described as a "true split sentence." See Poore v. State, 531 So.2d 161, 164 (Fla.1988). In Poore, we listed the five sentencing options then available to the trial court in imposing a sentence for a criminal offense:
[A] judge has five basic sentencing alternatives in Florida: (1) a period of confinement; (2) a "true split sentence" consisting of a total period of confinement with a portion of the confinement period suspended and the defendant placed on probation for that suspended portion; (3) a "probationary split sentence" consisting of a period of confinement, none of which is suspended, followed by a period of probation; (4) a Villery sentence, consisting of a period of probation preceded by a period of confinement imposed as a special condition; and (5) straight probation.
Id. at 164. We further explained in Eldridge that
[a] true split sentence is a prison term of a number of years with part of that prison term suspended, contingent upon completion on probation of the suspended term of years. When a defendant violates a true split sentence, the most severe sentence the trial court may impose on resentencing is to "unsuspend" the previously suspended prison term. That is, that the defendant is reincarcerated and must actually serve the previously suspended term of years in prison.... In [the probationary split] sentence, if the defendant violates probation, the trial court may impose any sentence it might have originally imposed.
760 So.2d at 889 n. 1; see also § 948.06(1). In State v. Powell, 703 So.2d 444, 446 (Fla.1997), we recognized that section 948.01(11), enacted after Poore, authorizes a sentence not described in that case-a period of probation followed by a period of incarceration, which we labeled a "reverse split sentence."

B. The Tripp Line of Cases
Tripp, the case principally relied upon by the DOC and the First District as justifying the imposition of a forfeiture penalty in this case, concerned credit for time served on a completed sentence when a defendant is sentenced on a different offense to a term of incarceration upon revocation of probation. In Tripp, the Court rejected the contention that because convictions for two separate crimes result in two separate sentences, the offender is not entitled to credit for time served. See *382 622 So.2d at 942. We determined that where a term of incarceration on one offense is followed by a term of probation on another, credit for time served on the first offense must be awarded on the guidelines sentence imposed after revocation of probation on the second offense. See id.
Although we did not identify the combined sanctions in Tripp as a true or probationary split sentence, we emphasized that the offenses were "factors that were weighed in the original sentencing." Id. We stated that our decision served two purposes: first, to ensure that offenses originally sentenced as a unit "continue to be treated in relation to each other, even after a portion of the sentence has been violated," and second, to prevent offenders from receiving a sentence upon revocation of probation that, combined with the sentence originally received, exceeds the maximum guidelines sentence. Id.
In a decision issued shortly after Tripp, Horner v. State, 617 So.2d 311 (Fla.1993), we stated that the provision now found in section 948.01(6) defines "split sentencing with regard to the sentencing that the trial court is imposing for all cases against the defendant." Id. at 313. Horner involved a "multiple-case sentence," id. at 312, in which the defendant was sentenced in three separate cases. We concluded that because the trial court adjudicated "three cases in one hearing and imposed a single split sentence," a term of probation on one offense that created a gap between the incarceration and probation imposed on another offense did not violate the statutory requirement that probation immediately follow incarceration in a split sentence. Id. at 313.
In subsequent decisions based on Tripp, we continued to emphasize that several sentences imposed in a single sentencing based on a single scoresheet were to be treated as a single unit upon revocation of probation or community control. In Hodgdon v. State, 789 So.2d 958 (Fla.2001), we repeated the imperative that "offenses treated together at sentencing via a single scoresheet continue to be treated as a single unit for purposes of sentencing upon a violation of probation." Id. at 962 n. 5 (emphasis supplied). The issue in Hodgdon was whether the defendant was entitled to have Tripp credit applied individually to the sentence for each offense on which he violated probation. This Court held that Tripp's requirement of credit for time previously served applies to the overall sentence imposed upon violation of probation rather than against each individual count on which probation is revoked. See id. at 963.
The driving force in Hodgdon, as in Tripp, was fairness. To have applied credit against the sentence on each individual count rather than against the overall sentence would have circumvented the guidelines by providing "a sentencing boon or windfall to defendants upon violations of probation." Id. In Hodgdon, per-count credit would also have resulted in the defendant serving no time in prison  a result surely contrary to the trial court's intent. See id. at 962.
In another case arising from Tripp, this Court reaffirmed that because of the continuing interrelationship of sentences originally imposed together, "Tripp should be applied notwithstanding the fact that the newly imposed sentence is within the guidelines." State v. Witherspoon, 810 So.2d 871, 873 (Fla.2002). Thus, we held in a single-scoresheet scenario that an offender was entitled to Tripp credit even though the sentence imposed upon violation of probation would not exceed the maximum overall guidelines sentence when combined with the time previously served on a different offense. Id. at 873. Most recently, in Moore v. State, 882 So.2d 977 *383 (Fla. 2004), this Court held that Tripp does not apply to the Criminal Punishment Code, which is effective for offenses committed on or after October 1, 1998. We explained that the interrelationship of sentences under the guidelines is absent from the Criminal Punishment Code, which provides no ceiling other than the statutory maximum penalty and authorizes consecutive sentences. See id. at 980-81.

C. Tripp Meets Eldridge

In Eldridge, we construed the statutory provision applicable here in a case that involved true split sentences of prison and probation imposed for a number of offenses. See 760 So.2d at 889. We held that upon revocation of community control or probation imposed as part of a true or probationary split sentence for a single offense, both the trial court and the DOC have the authority to forfeit gain time. See id. at 892. We had previously explained, in Forbes v. Singletary, 684 So.2d 173, 174 (Fla.1996), that the trial court's authority derives from language in section 948.06(6) providing that upon revocation of the probationary or community control portion of a split sentence, the offender may be deemed to have forfeited all gain time earned up to the date of his release. We held in Eldridge that pursuant to section 944.28(1), the DOC may forfeit the gain time even if the trial court chooses to retain it. See 760 So.2d at 891.
We recognized in Eldridge that actual time served and gain time are not the same when it comes to awarding credit to a defendant upon revocation of probation. "While the award of gain time reduces an inmate's release date, just as actual time spent incarcerated, it is clearly not synonymous with actual time served. On the contrary, gain time is time not served." Id. The DOC explained that the authority to award and forfeit gain time (as opposed to the trial court's authority to award credit for time served) is used to "encourage good behavior in prison and on supervision." Id. at 890. We observed that it was the "Legislature that provided for the award of gain time in the first place and it made the retention of that gain time conditional upon the satisfactory completion of the inmate's supervision." Id. at 892. Thus, under Eldridge, when a defendant is sentenced to a prison term upon revocation of probation imposed as part of a split sentence for a single offense, the DOC has the complete authority to forfeit all gain time previously awarded. As in the single-unit sentence scenario addressed in Tripp, the effect of this forfeiture on single-offense sentences is to require the offender to serve either the forfeiture penalty or the new sentence less time previously served, whichever is greater.
In this case, the First District concluded that the sanctions initially received by Gibson were a probationary split sentence within the meaning of Eldridge. See Gibson, 828 So.2d at 423. Relying on Tripp, Horner, Hodgdon, and Eldridge, Judge Lewis elaborated on this conclusion in his separate concurrence:
[E]ven though he was convicted of multiple offenses, Gibson received only one sentence because the offenses were scored on a single scoresheet and considered together in forming his scoresheet sentence.
As Gibson received only one sentence for his three cases, his initial sentence constituted a probationary split sentence. Thus, pursuant to Eldridge, the Department had the authority to forfeit any accrued gain time upon revocation of probation.
Id. at 424-25 (Lewis, J., specially concurring).
Judge Lewis's analysis correctly applies our precedent in this area. We conclude *384 that the DOC's application of section 944.28(1) to the single-unit sentence structure first addressed in Tripp is consistent with our prior case law in which we have recognized the continuing relationship among guidelines sentences that were originally imposed in relation to one another. Application of section 944.28(1) to single-unit sentences also serves the Legislature's purpose of penalizing offenders for violation of probation through the forfeiture of gain time.
We conclude that extending the interrelationship of single-unit guidelines sentences to gain-time forfeiture does not violate the requirement in section 775.021(4)(a), Florida Statutes (2003), and Florida Rule of Criminal Procedure 3.701(d)(12) that the offender receive a sentence for each offense. An offender sentenced for multiple offenses receives a separate sentence for each offense, even though the sentences for offenses scored on a single scoresheet are viewed as a single unit out of concern for fairness and uniformity in sentencing. So long as each sentence remains within the statutory and guidelines maximums, the application of the gain-time forfeiture does not turn separate sentences into an unauthorized general sentence.
Viewed from the perspective of fairness and uniformity, an offender sentenced upon revocation of probation that was imposed as part of a single-unit sentence should not be exempt from the gain-time forfeiture penalty of section 944.28(1) while an offender sentenced upon revocation of probation imposed as part of a split sentence for a single offense is subject to the forfeiture penalty. Allowing the forfeiture penalty to be applied to single-offense split sentences while precluding application of the penalty to single-unit sentences on which the offender received Tripp credit would result in disparate treatment based solely on sentence structure rather than for any purpose served by either Tripp or section 944.28(1).
We recognize that the DOC's application of section 944.28(1) to single-unit sentences will in some cases counteract much of the benefit of Tripp credit. However, if we were to hold that section 944.28(1) does not extend to single-unit sentences, the credit for unforfeited gain time applied to sentences imposed upon revocation of probation would give offenders such as Gibson a windfall in comparison to those sentenced to prison upon violating probation imposed as part of a single-offense split sentence. As we stated in Hodgdon, "Tripp was never intended to provide a sentencing boon or windfall to defendants upon violation of probation." 789 So.2d at 963.

III. THIS CASE
Gibson completed his sentences in Case Nos. 93-216 and 93-297 with no post-release supervision of any kind and thus was not subject to reimprisonment in those cases. The trial court sentenced Gibson to seven years of incarceration in Case No. 93-960. When Gibson applied for Tripp credit, he received 1681 days of credit for time actually served on the previous sentences.
The First District stated that the trial court also credited unforfeited gain time accrued on the initial prison sentences. See Gibson, 828 So.2d at 423. However, the record does not indicate exactly how much credit the trial court intended to grant under Tripp. If the trial court had knowingly granted 1969 days of credit for unforfeited gain time as well as 1681 days of credit for the 1681 days actually served, see supra at 378, Gibson would have received ten years of credit on a seven-year sentence, which would have negated any punishment for violation of probation. We therefore reject Gibson's assertion that he *385 should have received credit for both time served and gain time from the expired sentence without being subjected to the forfeiture penalty.
Gibson also asserts that the gain-time forfeiture from the expired sentences in Case Nos. 93-216 and 93-297 caused a double jeopardy violation, because in effect the forfeiture of gain time resurrects a sentence that has been fully served. This concern is also implicit in Judge Benton's view that a prison sentence without a probationary component cannot be revived once the sentence has expired. See Gibson, 828 So.2d at 428 (Benton, J., dissenting).
We conclude that the gain-time forfeiture did not result in a double jeopardy violation in this case. Gibson received a cumulative seven-year sentence upon revocation of probation. Had he received neither Tripp credit nor the gain-time forfeiture penalty, he would have been compelled to serve all seven years, less any newly earned gain time. However, after the trial court granted Tripp credit, the DOC subtracted 1681 days of Tripp credit on the sentences in Case Nos. 93-216 and 93-297, yielding 874 days or 2.4 years to be served on the seven-year (2555-day) term. Then, in order to effectuate intent of section 944.28(1) that the prisoner be penalized for probation violation by loss of gain time previously accrued, the DOC applied section 944.28(1) in a manner that required Gibson to serve no less than the forfeiture penalty upon revocation of probation. Because the forfeiture penalty exceeded the sentence imposed upon revocation of probation after deduction of time served on the prior sentence, Gibson served only the forfeiture penalty, rather than the seven years he would have served without either the credit or the penalty. Accordingly, he did not suffer a "Tripp penalty" in which the forfeiture of gain time from the completed sentences resulted in a sentence on violation of probation longer than he would have received without taking into consideration the completed sentence for purposes of either the Tripp credit or statutory forfeiture penalty. With no net increase in the revocation sentence based on the expired sentence, there is no double jeopardy violation.

IV. CONCLUSION
The certified question in this case asks whether the forfeiture penalty authorized by our interpretation of section 944.28(1) in Eldridge also applies to the type of sentence imposed in Tripp  i.e., those in which offenses pending for sentencing are included in the same scoresheet and incarceration is imposed for one offense and probation or community control for another. For the reasons explained herein, we answer the certified question in the affirmative and approve the decision below.
It is so ordered.
WELLS, ANSTEAD, LEWIS, QUINCE, CANTERO and BELL, JJ., concur.
NOTES
[1] The First District's certification of a question of great public importance gives us discretionary jurisdiction to review its decision. See art. V, § 3(b)(4), Fla. Const. We have chosen to retain jurisdiction although Gibson's sentence has expired so we may address the certified question and resolve uncertainty reflected in the district court opinion on the applicability of section 944.28(1), Florida Statutes (1993), to sentences like those imposed here. This is an issue affecting numerous sentences imposed upon revocation of community control or probation. Cf. Holly v. Auld, 450 So.2d 217, 218 n. 1 (Fla.1984) ("It is well settled that mootness does not destroy an appellate court's jurisdiction ... when the questions raised are of great public importance or are likely to recur.").
[2] See Fla. R.Crim. P. 3.701(d)(1) ("One guideline scoresheet shall be utilized for each defendant covering all offenses pending before the court for sentencing.").
[3] Gibson's service of his sentence was fulfilled as follows:

 21 days Original county jail credit
 1660 days Time served in prison
 1200 days Basic gain time
 979 days Additional gain time
 -210 days Gain time forfeited for disciplinary reasons
 _________
 3650 days Ten years (10 × 365 days)

[4] This method of calculation is more beneficial to the prisoner than adding the forfeiture penalty to the new sentence after deducting credit for time served. In Gibson's case, treating the forfeiture penalty as consecutive to the new sentence would have resulted in his serving 288 days more than the seven-year sentence imposed.
[5] In 1989, revocation of probation or community control was added to the circumstances contained in section 944.28(1) that authorize the DOC to forfeit an offender's gain time. See ch. 89-531, § 6, at 2717, Laws of Fla.; Dowdy v. Singletary, 704 So.2d 1052, 1053-54 (Fla.1998). The 1989 legislation superseded State v. Green, 547 So.2d 925 (Fla.1989), in which this Court held that under a previous version of section 944.28(1), credit both for time actually served and for gain time must be granted against a sentence imposed upon revocation of the probationary portion of a split sentence. See id. at 927. The present version is essentially unchanged from the 1993 version applicable to Gibson.
[6] Section 948.06(6) was enacted in chapter 89-531, section 13, at 2720, Laws of Florida.
[7] Effective May 30, 1997, forfeiture of gain time is mandatory under this provision, which was redesignated section 948.06(7). See ch. 97-239, § 5, at 4403, Laws of Fla.; ch. 97-299, § 13, at 5381-82, Laws of Fla.