909 So.2d 364 (2005)
Kenneth SCOTT, Appellant,
v.
STATE of Florida, Appellee.
No. 5D04-2570.
District Court of Appeal of Florida, Fifth District.
July 29, 2005.
Rehearing Denied September 2, 2005.
*365 James S. Purdy, Public Defender, and Brynn Newton, Assistant Public Defender, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Mary G. Jolley, Assistant Attorney General, Daytona Beach, for Appellee.
SHARP, W., J.
Kenneth Scott appeals from the revocation of his probation and sentence of five years in prison for battery on a law enforcement officer and resisting an officer with violence.[1] On appeal, Scott argues it was error for a judge other than the judge who accepted his plea to the original charges to have presided over the probation violation proceeding. Scott also argues the judge who presided over the probation violation proceeding should have granted his motion to disqualify her. We find no merit to either argument and affirm.
In October 2003, Judge John Griesbaum accepted Scott's no contest pleas to the above offenses, adjudicated him guilty and placed him on five years drug offender probation. In January 2004, Judge Griesbaum modified Scott's probation by converting all drug testing fees, court costs and fines to a civil lien.
In February 2004, Scott's probation officer filed an affidavit alleging Scott had violated his probation by consuming alcohol in January 2004 and by being arrested for tampering with a state witness and resisting arrest without violence in February 2004. According to the arrest report, Scott was attempting to scare the victim from testifying in a Department of Children and Families case. The victim had to be compelled to testify by Judge Lisa Davidson under threat of contempt.
When advised of the charges against him, Scott became irritated and pulled away from the deputies. Scott was placed under control by the deputies and escorted to booking where he remained belligerent. Judge Griesbaum later issued a warrant for Scott's arrest based only on the consumption of alcohol allegation.
*366 In May 2004, Scott appeared before Judge Davidson on the violation of probation charge. Defense counsel told Judge Davidson that Scott was going to admit violating his probation by using alcohol pursuant to a plea agreement with the state. The plea agreement provided that Scott would receive concurrent sentences of 15.15 months in prison with no probation to follow. Judge Davidson took the matter under advisement and continued the hearing.
A few days later, Scott filed a motion to disqualify Judge Davidson. Scott alleged Judge Davidson was also presiding over a dependency proceeding involving his infant son. Scott believed the Department wanted to keep the child away from him and the child's mother and was seeking to have his parental rights terminated. Scott admitted he had become frustrated by being separated from his son and said some rude things to Judge Davidson and scuffled with the deputy in her dependency court.
When he arrived for his probation violation hearing, Scott did not see Judge Davidson's courtroom deputy with whom he had scuffled. He discussed with his attorney the possibility of asking Judge Davidson to disqualify herself but decided she could be fair and did not ask for disqualification.
However, when defense counsel told Judge Davidson that Scott had reached a plea agreement with the state, she was hesitant to accept it even though she typically accepts negotiated pleas. Judge Davidson then announced she was continuing the case but would not give a reason for doing so. In his motion Scott alleged he believed that Judge Davidson is biased against him, as a result of presiding over the dependency case, and wants to give him a long prison sentence in the probation violation case to impair his ability to regain custody of his son.
Judge Davidson denied the motion for disqualification and continued to preside over the probation violation case. At the violation hearing, Scott's probation officer testified that Scott appeared to be intoxicated, was taken by police to the hospital and was later Baker Acted in January 2004. His blood alcohol level was .24, which is a level higher than toxic.
A police officer testified he responded to a call that Scott was bothering his neighbors. Scott smelled of alcohol. The officer gave him a trespass warning and Scott left on his bicycle for his AA meeting.
About an hour later, the officer stopped on the side of the road where Scott apparently fell off his bicycle. Scott had an even stronger odor of alcohol about him and was belligerent and agitated. Scott said the men who had flagged down the police for help had beaten him; he later accused the police officers at the scene of beating him. The officer called for an ambulance to take Scott to the hospital.
Scott testified a neighbor gave him homemade apple cider and he drank several glasses. He got on his bicycle to go to a meeting but got sick and fell off the bicycle. The next thing he remembered was waking up in the hospital. The hospital told him he had "poisoning" in his blood. Scott later realized it was the cider. Scott claimed he did not drink any alcohol that day, did not have any contact with the police officer and did not have any arguments with neighbors.
Judge Davidson found that Scott had violated his probation by using intoxicants. Scott was given an opportunity to speak in mitigation and claimed he had been "railroaded" and has committed no crime.[2]
*367 Judge Davidson revoked Scott's probation and sentenced him to concurrent terms of five years in prison. Scott responded: "You know something, you are very dishonest, you know that? You got hell to pay, woman." Judge Davidson then added 6 points to Scott's score with no objection by defense counsel.
While his appeal was pending from his probation revocation, Scott filed a motion to correct sentencing error pursuant to rule 3.800(b)(2). Scott alleged the necessity for substituting Judge Davidson for Judge Griesbaum had not been demonstrated in the record, as required by Florida Rule of Criminal Procedure 3.700(c). Scott requested that his sentence be corrected by providing reasons why the substitution of a successor judge was necessary, providing reasons why the rule does not apply, or rescheduling the cause for a rehearing before Judge Griesbaum.
Judge Davidson denied Scott's request for a rehearing before Judge Griesbaum. Judge Davidson pointed out that in March 2004, Judge Griesbaum had rotated onto the dependency bench and took over her dependency docket. She in turn rotated onto the criminal bench and took over Judge Griesbaum's criminal docket. Judge Davidson also noted she had heard the testimony and reviewed the evidence at the probation hearing and had thoroughly acquainted herself with the facts of the case. Judge Davidson concluded she was more familiar with the case as she had presided over the revocation hearing and was in the best position to sentence Scott on the violation of probation.

I. JUDICIAL DISQUALIFICATION
Scott contends his motion to disqualify Judge Davidson recited a sufficient basis for his fear that he would not receive a fair hearing  Judge Davidson has been presiding over his child dependency proceedings which he believed sought to terminate his parental rights, he had become frustrated at a dependency hearing and scuffled with Judge Davidson's courtroom deputy and Judge Davidson had refused to accept the plea agreement in the probation violation case. Since the motion was legally sufficient, Scott argues it should have been granted.
The test a trial court must use in determining whether a motion to disqualify is legally sufficient is whether the facts alleged would place a reasonably prudent person in fear of not receiving a fair and impartial trial. Chamberlain v. State, 881 So.2d 1087 (Fla.2004), cert. denied, ___ U.S. ___, 125 S.Ct. 1669, 161 L.Ed.2d 495 (2005); Barnhill v. State, 834 So.2d 836 (Fla.2002), cert. denied, 539 U.S. 917, 123 S.Ct. 2281, 156 L.Ed.2d 134 (2003). The motion to disqualify must be well-founded and contain facts germane to the judge's undue bias, prejudice, or sympathy. Wright v. State, 857 So.2d 861 (Fla.2003), cert. denied, 541 U.S. 961, 124 S.Ct. 1715, 158 L.Ed.2d 402 (2004). Whether the motion is legally sufficient is a question of law, and the proper standard of review is de novo. Chamberlain; Barnhill.
We conclude Scott's motion was not legally sufficient. Scott did not allege Judge Davidson made any comments or rulings in his dependency case which suggested she would be biased against him in this proceeding. Nor did Scott allege that Judge Davidson had any reaction to his outburst and in fact, does not even allege she heard what he said or was aware of his *368 outburst.[3] Furthermore, a judge is not required to accept a plea negotiated by the parties. Fla. R.Crim. P. 3.170(a); 3.171(d).
While Scott may believe Judge Davidson wants to give him a long prison sentence simply to impair his ability to regain custody of his son, the subjective fear of a party seeking the disqualification of a judge is not sufficient. The fear of judicial bias must be objectively reasonable. Foy v. State, 818 So.2d 704 (Fla. 5th DCA 2002).
Here Scott did not provide any objective basis for his claim that Judge Davidson was biased against him. Thus his motion for disqualification was properly denied. See Leone v. State, 666 So.2d 1050 (Fla. 3d DCA 1996) (motion to disqualify judge was legally insufficient and properly denied where nothing in the record revealed any bias, prejudice, or ill will on the part of the judge, but only the exercise of legitimate judicial function); Oates v. State, 619 So.2d 23 (Fla. 4th DCA), rev. denied, 629 So.2d 134 (Fla.1993) (fact that judge held defendant in contempt and remarked that defendant was being a "jerk" did not require disqualification).

II. SUCCESSOR JUDGE
Florida Rule of Criminal Procedure 3.700(c)(1) provides as follows:
In any case, other than a capital case, in which it is necessary that sentence be pronounced by a judge other than the judge who presided at trial or accepted the plea, the sentencing judge shall not pass sentence until the judge becomes acquainted with what transpired at the trial, or the facts, including any plea discussions, concerning the plea and the offense.
On appeal, Scott contends his motion to correct sentencing error should have been granted and his probation violation case reassigned to Judge Griesbaum, the judge who originally accepted his plea and placed him on probation. Scott argues the rotation of circuit judges between the civil and criminal benches does not constitute an "emergency" making it necessary to substitute judges. See Clemons v. State, 816 So.2d 1180 (Fla. 2d DCA 2002) (reassignment of the original judge to the civil division does not meet the "necessity" requirement of rule 3.700(c)(1)).
We first question whether rule 3.700(c)(1) even applies to this probation violation proceeding. The language of the rule is limited to the sentence from the original conviction. The Committee Notes state subdivision (c) was added to the rule to emphasize that the sentencing procedure should be conducted by the trial judge or the judge taking the plea. The rule is silent with respect to revocation proceedings.
In Lester v. State, 446 So.2d 1088, 1089-1090 (Fla. 2d DCA 1984) (Grimes, Acting C.J., concurring), then Acting Chief Judge Grimes explained in his concurring opinion why this rule should not apply to probation proceedings:
Florida Rule of Criminal Procedure 3.700(c) as construed in Lawley v. State[,377 So.2d 824 (Fla. 1st DCA 1979)] contemplates that, except in emergency situations, a sentence shall be imposed by the trial judge or the judge who accepted the plea. However, where a judge has placed the defendant on probation and the probation is later revoked by another judge, I do not believe the rule demands that the first judge conduct sentencing even though upon revocation the defendant is technically being convicted *369 of the original offense. The obvious purpose of the rule is to assure that the judge most familiar with the defendant will conduct the sentencing. The original judge would not have chosen probation unless he felt at that time that the defendant warranted being placed in such a status. When the defendant violates his probation the circumstances have changed, and the judge who presided at the revocation hearing knows more about the defendant's current status than the original judge. Aside from the administrative nightmare of recalling judges who may have been transferred to other divisions, to require the original trial judge to conduct sentencing after a probation revocation would violate the spirit of the rule.
446 So.2d at 1089-1090.
This court's opinion in Cowart v. State, 860 So.2d 1041 (Fla. 5th DCA 2003) has been interpreted as holding that rule 3.700 applies to probation violation proceedings. In that case, Judge Smith convicted Cowart of possession of cocaine and battery on a law enforcement officer and sentenced him to five years of incarceration suspended on the condition that he complete drug offender probation. Cowart was later alleged to have violated that probation. Another judge, Judge Adams, presided over the violation hearing, revoked Cowart's probation and sentenced him to 5 years in prison.
On appeal, this court concluded Judge Adams misunderstood his authority in a revocation proceeding and apparently felt constrained to merely enforce the sentence imposed by Judge Smith. Since Judge Adams failed to consider his other options, this court reversed Cowart's sentence and remanded for reconsideration. On remand, this court directed the judge who originally imposed sentence to preside unless it was necessary that another judge preside.[4]
We did not intend for Cowart to be interpreted as requiring the application of rule 3.700 in every probation violation case. In some situations, the original judge may have fashioned a particular sentence and the violation of probation needs to be considered by the original judge in that context (as apparently was the case in Cowart). However, in other cases, the violation of probation has nothing to do with the original sentencing and could be heard by another judge, as Judge Grimes explained in Lester.
Even where rule 3.700 does apply, we would require the defendant to object at the probation violation hearing. Otherwise, the defendant could take his chances with the successor judge at the probation violation hearing and object only if the outcome is unfavorable. The defendant would then seek a new probation hearing before the original judge, citing rule 3.700. As we have stated before, the rules of procedure were neither designed to nor intended to be an escape device from justice. Beck v. State, 817 So.2d 858, 862 (Fla. 5th DCA 2002).
If the defendant does not object at the violation hearing and another judge does in fact conduct the hearing, we consider the defendant has waived or even invited any alleged error. Here, for example, Scott did not complain about the fact that Judge Davidson was conducting the probation violation proceeding until after the hearing had been concluded, his probation revoked and sentence imposed.
*370 By this point, Judge Davidson was more familiar with the issue  the alleged probation violation  than Judge Griesbaum. Judge Davidson became acquainted with Scott's file, prior record and PSI and heard from four witnesses regarding the probation violation. Scott has not alleged that Judge Griesbaum, but not Judge Davidson, was aware of any fact or circumstance that was critical to a fair determination of the probation violation. If the "obvious purpose of the rule is to assure that the judge most familiar with the defendant will conduct the sentencing," as we believe it is, then the appropriate judge to have sentenced Scott was Judge Davidson.
AFFIRMED.
THOMPSON and MONACO, JJ., concur.
NOTES
[1] §§ 784.07(2)(b); 843.01, Fla. Stat.
[2] Scott's prior record includes three burglaries, two grand thefts, three misdemeanor petit thefts, one misdemeanor for possessing stolen property, three DUIs, driving with a suspended or revoked license and possession of cannabis.
[3] If outbursts alone were a legally sufficient basis to disqualify a judge, then the defendant would be able to control who presides over his case.
[4] In so doing, Cowart cited Lester v. State, 446 So.2d 1088 (Fla. 2d DCA 1984), among other cases. However, in Lester, the court concluded the defendant had not been prejudiced by having a successor judge preside over the probation violation proceedings and affirmed the revocation of his probation and sentence by the successor judge.