ROTHENBERG, J.
The defendant, Nelson Vladimir Gonzalez, appeals from the revocation of his probation and the imposition of a fifteen-year prison sentence. We affirm.
On May 24, 2004, the defendant entered into a negotiated plea with the State wherein he agreed to plead guilty to second degree murder, resisting an officer with violence, three counts of aggravated assault on a police officer, driving with an unlawful blood alcohol level, and driving with a suspended license,[1] and to be sentenced to ten years in prison followed by ten years of probation with several special conditions, including that the defendant not apply for early termination of his probation and that he not “apply for a driver’s license [at] any time.” Before accepting the defendant’s plea, the trial court specifically asked the defendant if he had been given a sufficient opportunity to discuss this plea offer with his attorney and whether he understood that he was agreeing to a lifetime driver’s license revocation as a special condition of his probation. The defendant answered both questions in the affirmative, and the trial court accepted the defendant’s plea and sentenced him as agreed. The record also reflects that after the defendant entered his plea, he signed an Orders of Supervision form (“orders of probation”) prepared by the in-court probation officer, which lists as a *552 special condition of probation: “LIFETIME D.L. REVOCATION NOT TO APPLY FOR DL.”
Despite specifically agreeing to a lifetime revocation of his driver’s license and to not ever apply for a driver’s license, the defendant applied for and received a driver’s license soon after he was released from prison. When the defendant’s supervising probation officer discovered that the defendant had obtained a driver’s license, the supervising probation officer filed an affidavit, and a probation violation hearing was set by the trial court.
Prior to the commencement of the probation violation hearing, the State informed the trial court that the defendant’s scoresheet range was 25.375 years to life, but that the State and the defendant had entered into a negotiated plea of six years in prison. Based on the alleged violation and the seriousness of the offenses the defendant had committed: driving under the influence with another person in the vehicle; fleeing from the police; driving his pickup truck the wrong way into oncoming traffic; turning and aiming his truck directly at an officer and narrowly missing him; and ultimately causing the death of the passenger in his vehicle, the trial court rejected the State’s plea offer, and a probation violation hearing was conducted.
The primary issue at the probation violation hearing was whether the defendant, who speaks Spanish and possesses a limited understanding of the English language, was properly advised that, as a special condition of his probation, he had a lifetime driver’s license revocation and that he was never to apply for a driver’s license. After taking testimony from the in-court probation officer, the supervising probation officer, and the defendant, and also reviewing the plea transcript and the orders of probation signed by the defendant, the trial court found that the defendant had been properly advised of these special conditions, the defendant knew he was prohibited from obtaining a driver’s license, and his violation was substantial and willful.
The defendant raises three grounds for reversal on appeal: (1) the trial court abandoned its role of impartiality by rejecting the State’s plea offer; (2) there was insufficient evidence that the defendant willfully and substantially violated his probation; and (3) the fifteen-year sentence imposed was unlawful because the defendant’s original sentence was a split sentence, and thus, the sentence imposed upon a probation violation must be limited to the probationary period of the split sentence, which is ten years. We address each of these grounds in turn.
1. Whether the trial court abandoned its role of impartiality by rejecting the plea offer negotiated by the State
Florida Rule of Criminal Procedure 3.171(a) encourages the State and the defense to engage in plea discussions and to reach an agreement on a potential plea to resolve the case. However, rule 3.171(a) specifically provides that the “[ultimate responsibility for sentence determination rests with the trial judge,” and the trial court may inquire as to the reasons for the offered plea prior to deciding whether or not to accept the negotiated plea. Fla. R. Crim. P. 3.171(d). Rule 3.171(d) additionally provides that if the trial court declines to accept the negotiated plea, it shall advise the parties why it is rejecting the plea. See also Scott v. State, 909 So.2d 364, 368 (Fla. 5th DCA 2005) (stating that “a judge is not required to accept a plea negotiated by the parties”) (citing Fla. R. Crim. P. 3.171(d)); Jernigan v. State, 608 So.2d 569, 570 (Fla. 1st DCA 1992) (“A trial court is *553 not obligated to accept a plea agreement which binds it to a specific sentence.”).
Although the trial court is not required to accept a negotiated plea, the trial court must remain neutral and impartial, and its decision cannot be based on bias or prejudice. See Carter v. State, 138 So.3d 536, 538 (Fla. 4th DCA 2014) (holding that the defendant’s motion to disqualify the trial court was legally sufficient to require disqualification where the defendant alleged that the trial court had prejudged him); Gonzalez v. Goldstein, 633 So.2d 1183, 1184 (Fla. 4th DCA 1994) (granting a writ of prohibition based on the trial court’s bias and prejudice where the trial court told defense counsel in an ex parte communication prior to the sentencing hearing that it planned on resentencing the defendant to the maximum under the guidelines regardless of any evidence in mitigation of punishment).
We have reviewed the transcripts of the probation violation hearing and the sentencing hearing, and we find no evidence that the trial judge abandoned her role as a neutral and impartial judicial officer during these hearings or that her decision to reject the State’s six-year plea was arbitrary or was influenced by any bias or prejudice against the defendant. Rather, the transcripts reflect that the trial court properly considered: (1) the defendant’s prior convictions; (2) the charges to which the defendant had pled guilty and the facts leadings to those charges; (3) that the lifetime revocation of the defendant’s driver’s license was an important aspect of the plea the defendant accepted in 2004; and (4) the short period of time that transpired between the defendant’s release from prison and the alleged violation of this special condition of probation. The record also demonstrates that the trial court did not prejudge the ease. On at least three occasions, the trial court expressed concern about the State’s proffered reasons for the offered plea, including potential proof problems and whether the defendant should accept the plea:
THE COURT: So you cannot prove he was ever instructed, that’s what I’m hearing you say, which begs the question of why should he admit to anything?
[THE PROSECUTOR]: I can prove that he was instructed because the probation officer instructed him and laid out the terms and has it written down that he instructed him, and he instructed—
THE COURT: In English?
[THE PROSECUTOR]: Correct, but he was instructed through an interpreter the day that the Court pled him.
THE COURT: Well, yes, but again, I mean, if that was the case we would only need colloquies and pleas for someone to be instructed on probation, but you know they have to be separately instructed by the officers.
[THE PROSECUTOR]: The date that he was placed on probation Officer Smith, who is present before Your Hon- or, went over the conditions of probation with him as well.
THE COURT: In English?
[THE PROSECUTOR]: No, I don’t— well, they were written down in English but I don’t believe that was done in English, but they were — it’s written out in English.
THE COURT: Okay. What do you mean don’t believe it was done in English?
[THE PROSECUTOR]: Because I believe it was done with the assistance of an interpreter.
THE COURT: A court interpreter?
[THE PROSECUTOR]: I believe that’s how it was done, yes.
*554 THE COURT: Is that what you’re going to be able to prove?
[THE PROSECUTOR]: I’d have to check with her.
THE COURT: Okay. Well, it’s two o’clock, the hearing was set for 1:30, and we’ve known this for a long time, you want to maybe chat with her and find that out? Because if it’s a fact that he was never instructed, then I don’t know why he’d be admitting anything.
[THE PROSECUTOR]: But, Judge, he would also have to testify and Your Honor would have to take him under oath and consider his credibility level if he were to testy that, in fact, that he didn’t understand—
THE COURT: That’s what a hearing is all about, but I can tell you this, I’m not inclined on a condition this important in this plea to accept an eight year prison sentence.
[THE PROSECUTOR]: Six years, Judge.
THE COURT: Whatever, six, even worse. I’m not inclined to accept it. However, the State’s at it’s [sic] own peril about whether or not you think you can demonstrate to me that he violated his probation. So we’re here for a hearing, I’m going to give you about a minute to go talk to that probation officer and ask that question and then you tell me if you are still ready to go forward. Okay. And we will be in recess.
(emphasis added).
As these quoted passages clearly reflect, the trial court, contrary to the argument made on appeal, did not abandon its role of impartiality or prejudge the case. In fact, the transcript demonstrates the reverse— the trial court’s concern was that the State’s plea offer was motivated by its inability to prove its case and that the defendant could be admitting to a violation that the State could not prove. Thus, the pre-hearing discussions clarify that the trial court did not believe a six-year sentence was sufficient punishment for the alleged violation for the very serious charges the defendant was initially charged with and was additionally concerned that the defendant might be accepting a plea with a six-year prison sentence to a violation the State could not prove.
We also conclude that the pre-hearing questions asked by the trial court were for the purpose of assessing whether or not it should accept the defendant’s plea to the probation violation, and the questions asked during the hearing were to assist the trial court, as the factfinder, in its understanding and assessment of the evidence presented, both of which were appropriate in this case. See Amason v. State, 76 So.3d 374, 377 (Fla. 2d DCA 2011) (finding that the trial court may conduct probation revocation proceedings in an informal manner and it may question witnesses so long as the trial court does not assume the role of the prosecutor); McFadden v. State, 732 So.2d 1180, 1185 (Fla. 4th DCA 1999) (stating that “[t]he requisite of a neutral factfinder does not foreclose a judge from asking questions designed to make prior ambiguous testimony clear”).
2. Whether the evidence was sufficient to establish a willful probation violation
The defendant also contends the trial court’s finding that the defendant willfully and substantial violated his probation is not supported by competent substantial evidence. The gist of the defendant’s argument is that he did not willfully violate his probation by applying for a driver’s license because no one ever explained to him that he had a lifetime revocation of his driver’s license and could not *555 apply for a driver’s license as a special condition of his probation.
The transcript of the plea colloquy reflects that the trial court and the State clearly and unambiguously informed the defendant of these special conditions of his probation, and that the trial court additionally questioned the defendant about whether he had discussed the plea offer with his attorney. The transcript reflects that the defendant was assisted by an official courtroom interpreter throughout these proceedings.
THE COURT: Are there special conditions?
[THE PROSECUTOR]: Conditions are complete time [sic] revocation. And he is not going to apply for a driver’s license any time....
[[Image here]]
THE COURT: All right. Mr. Gonzalez. I am told you wish to accept that offer. Is that correct, sir?
THE DEFENDANT: Yes.
[[Image here]]
THE COURT: Mr. Cobitz has been your lawyer, have you had enough opportunity to discuss this plea offer with him?
THE DEFENDANT: Yes.
[[Image here]]
THE COURT: ... I accept the plea of guilty. Find the defendant guilty. Adjudicate the defendant guilty. And sentence him as follows; on count One, felony murder, second decree I sentence the defendant to ten years State prison, followed by ten years reporting probation. Special condition that he submit to a life time driver’s license revocation. ...
The trial court also found that the defendant was alert and intelligent; he understood the nature and consequences of his plea; and he had entered into the plea knowingly, willingly, and voluntarily and with the advice of competent counsel. Thus, there is record evidence to support the trial court’s finding that when the defendant took his plea, he was advised in Spanish of all of the conditions of his probation, including that he had a lifetime driver’s license revocation and that he could never apply for a driver’s license.
In addition to the above evidence, both the in-court probation officer and the defendant’s supervising probation officer testified that they had advised the defendant of the conditions of his probation, including these special conditions, and both the in-court orders of probation and the subsequent orders of probation prepared by the defendant’s supervising probation officer, signed by the defendant and advising the defendant of these conditions of his probation, were introduced and considered by the trial court.
The in-court probation officer testified that although she had no independent recollection of this particular defendant, it was her duty as the in-court probation officer to instruct offenders being placed on probation of the conditions of their supervision, and if the offender did not speak English, to use an interpreter to explain these conditions with her. Thus, she could testify that because she signed the orders of probation, she went over the conditions and special conditions of probation -with the defendant, she used an interpreter to communicate with the defendant, and she instructed the defendant that he had a lifetime revocation of his driver’s license and he could not ever apply for a driver’s license or drive at all while on probation.
The defendant’s supervising probation officer also testified that he re-advised the defendant of these conditions of probation and used someone accompanying the de *556 fendant, who spoke both English and Spanish, to interpret for him. Although the defendant testified that he was never advised of this special condition in Spanish, the trial court found his testimony was not credible.
Because the trial court’s findings of fact, including that the defendant was not credible, are supported by competent substantial evidence, we affirm. See Henley v. State, 117 So.3d 1125, 1127 (Fla. 3d DCA 2012) (affirming order revoking the defendant’s probation where competent substantial evidence was adduced to establish that the defendant violated a condition of probation).
3. Whether the sentence imposed was legal
We also reject the defendant’s contention that the trial court erred by sentencing him to fifteen years in prison. As the defendant’s sentence is not a “true split sentence,” but rather a “probationary split sentence,” the fifteen year sentence is legal. See Gibson v. Fla. Dep’t of Corr., 885 So.2d 376, 381 (Fla.2004) (explaining that “[a] true split sentence is a prison term of a number of years with part of that prison term suspended, contingent upon completion on probation of the suspended term of years. When a defendant violates a true split sentence, the most severe sentence the trial court may impose on resentencing is to ‘unsuspend’ the previously suspended prison term. That is, the defendant is reincarcerated and must actually serve the previously suspended term of years in prison.... In [the probationary split sentence], if the defendant violates probation, the trial court may impose any sentence it might have originally imposed” (alterations in original) (quoting Eldridge v. Moore, 760 So.2d 888, 889 n. 1 (Fla.2000))). Accordingly, we affirm the revocation of the defendant’s probation and the imposition of the fifteen year sentence.
Affirmed.

. The arrest affidavit reflects that a police officer attempted a traffic stop of the defendant’s pickup truck. The defendant fled in the pickup truck, and the officer pursued. Eventually, numerous officers from several law enforcement departments joined the pursuit, during which the defendant ran a red light, entered an expressway heading in the wrong direction, and drove erratically on the highway causing law enforcement to close entrance ramps on the expressway. The defendant exited the expressway and entered a warehouse cul-de-sac. Officers followed him into the cul-de-sac while other law enforcement officers blocked off the exit of the cul-de-sac. Police officers ordered the defendant to stop, but the defendant turned his pickup truck directly at the officers, driving at an accelerated speed. The officer that was directly in the path of the oncoming pickup truck shot at the pickup truck. When the pickup truck eventually stopped, officers found that both the defendant and the passenger sustained gunshot wounds. The passenger later died at a trauma center.